Isaac MAMMEN and Saramma Isaac, a/k/a Shirley Mammen, Plaintiff,

v.

BRONSON & MIGLIACCIO, LLP; Jill Anderson; Corina Wheelock; Mark Coldwell; CACV of Colorado, LLC; and One or More "John or Jane Smiths," Defendants.

Case No. 8:05–CV–2005–T–17MAP.

United States District Court, M.D. Florida, Tampa Division.

March 27, 2009.

Timothy Condon, Frederick Wiley Vollrath, Vollrath–Condon, PA, Tampa, FL, for Plaintiffs.

Michael Linn Duncan, Volpe, Bajalia, Wickes, Rogerson & Wachs, Robert C.

Graham, Akerman Senterfitt, Jacksonville, FL, for Defendants.

## ORDER

ELIZABETH A. KOVACHEVICH, District Judge.

This cause is before the Court on:

Dkt. 34  Amended Complaint
Dkt. 47  Motion for Partial Summary Judgment as to Liability (Plaintiff)
Dkt. 48  Notice, with Attachments
Dkt. 49  Notice, with Attachments
Dkt. 51  Notice, with Attachments
Dkt. 52  Motion for Summary Judgment (Defendants)
Dkt. 53  Response in Opposition
Dkt. 54  Response in Opposition

This case includes claims brought by Plaintiffs Isaac Mammen and Saramma Mammen for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA")(Count I), and the Florida Consumer Collection Practices Act, Ch. 559, *Fla. Stat.* ("FCCPA")(Count II) against Defendants Bronson & Migliaccio, LLP, Jill Anderson, Corrina Arroyo (f/k/a Wheelock), Mark Coldwell, CACV of Colorado, LLC, and One or More "John or Jane Smiths".

### I.  Standard of Review

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004)(internal citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir.2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. The Court will not weigh the evidence or make findings of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### II.  General Principles

▬ The FDCPA is a remedial statute, and its provisions are to be liberally construed liberally in favor of the consumer debtor. Courts in this circuit have construed the FDCPA to be a strict liability statute. *Ferguson v. Credit Management Control, Inc.*, 140 F.Supp.2d 1293 (M.D.Fla.2001). A single violation of any provision is sufficient to trigger liability. However, a narrow exception to strict liability applies to strict liability for certain provisions of the FDCPA. A debt collector may reasonably rely on information provided by the creditor under Section 1692k(c). To prove this defense on summary judgment, the debt collector bears the burden of showing by a preponderance of the evidence that: 1) the debt collector's error was bona fide and unintentional; and

2) that the debt collector maintained reasonable procedures to avoid errors. *Johnson v. Riddle,* 443 F.3d 723, 727 (10th Cir.2006). A violation is considered unintentional if the debt collector can establish lack of specific intent to violate the FDCPA. *Johnson* at 728.

### III. Material Undisputed Facts

Plaintiff Isaac Mammen ("Mr. Mammen") sent in an application for a Fleet Bank credit card, but never heard back from Fleet Bank about the application. A Fleet Bank credit card was mailed to Plaintiff's address, and was allegedly intercepted and used by one or more unknown third parties. The card became active in early 2001, and went into default in June, 2003. Between the time the credit card was issued, and when it went into default over two years later, charges were made in various parts of the United States, including New York and California, as well as in Europe. Multiple payments were made on the account, which initially prevented the account from going into default. Over those years, the balance on the account exceeded over $20,000.00.

When the Fleet Bank credit card went into default 2003, the balance on the account was $7,937.29. The account was sold by Fleet Bank as part of a bad debt portfolio to CACV of Colorado, LLC ("CACV"). Through its parent company Collect AMERICA, Inc., ("Collect America"), CACV then proceeded to attempt to collect the debt from Plaintiff Isaac Mammen, in whose name the account had been used without Plaintiff's knowledge.

CACV of Colorado is a purchaser of bad debt portfolios. (Dkt. 51–9, Declaration of Frank Woodhouse, paragraph 2). CACV is a "debt collector" within the meaning of the FDCPA. The collection activities on the debts purchased by CACV are conducted by Collect America, Ltd. ("Collect America") on behalf of CACV, its wholly-owned subsidiary. There is an online computer record system monitored by Collect America which allows all debt collectors retained by the company to see all previous entries with respect to any account, including the Isaac Mammen account (Dkt. 51–9, Woodhouse Declaration, ¶¶ 6–7); that set of computer records is attached to the Woodhouse declaration as Exhibit "B" (Dkt.51–11) ("the computer records"). The computer records are a contemporaneous record of "any communication to or from a consumer, written or oral" including a "list of all notes and database entries" made with respect to the purported account of Isaac Mammen. (Woodhouse declaration, ¶ 6.) Defendants assert the computer records include records of all contacts, and contain "writings" with respect to contacts and statements by Plaintiffs.

Defendant CACV relies on Collect America to maintain complete records on each of its accounts, including the maintenance of complete notes and documentation of all servicing, administration, collection efforts, and all other activities. Defendant CACV relies on the contractual provisions controlling CACV's purchase of receivables from Fleet Bank National Association, and Fleet Credit Card Funding Trust, including the warranties by Fleet that the receivables purchased are legal, valid and binding debts, and not accounts that are in dispute or alleged to be fraudulent (Dkts. 51–9, 51–10). The contractual provisions within the Purchase Agreement are designed to prevent unintentional violations of the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act. Defendant CACV had purchased many accounts from Fleet in the past, and accurate information was provided as to those accounts. Fleet also provided verification of the debt information, showing charges and payments to the Mammen account.

The collection notes of Barnes Law Office indicate that Plaintiff Isaac Mammen had spoken with Fleet about the account, but Fleet did not recall the account.

In order to collect on the Mammen account, Collect America retained the Law Office of Curtis O. Barnes, PC of Anaheim, California ("the Barnes Law Office"). The Barnes Law Office was linked to the headquarters of Collect America through an online program called "STARS", into which notes were periodically entered reflecting the collections process. A copy of the records from the STARS system was produced by Defendants, and discussed at deposition (Woodhouse Deposition, Dkt. 47–3), consisting of the cover sheets and pages 7 through 14, together with the STARS system report for the account of Mr. Mammen, which are attached to the deposition as Composite exhibit "B". Every debt collector who worked on this account, including Defendants in this action, had access to all entries made to date on the STARS system for the account of Mr. Mammen.

Initial contact was made by the Barnes Law Office with Plaintiff Shirley Mammen ("Mrs. Mammen") on June 6, 2003. She told the caller that she had never heard of a Fleet Bank credit card account in her husband's name, but that she would advise him to call them back. Approximately one hour later, Isaac Mammen called the Law Office of Curtis O. Barnes. The records reflect that Mr. Mammen told them that he did not have a Fleet Bank credit Card account. From June 6, 2003 forward, Plaintiffs allege that they were continually abused and harassed by the collections companies and personnel.

Defendants' computerized records reflect that Mr. Mammen again contacted the Law Office of Curtis O. Barnes on July 14, 2003, denied owing the debt, and explained that he was the victim of fraud. The entry of 7/14/2003 states that a fraud affidavit should be sent to Plaintiff. There is no record that a fraud affidavit was returned by Plaintiff.

Mr. Mammen repeatedly denied that the account was his, refused to pay, and asserted fraud when he spoke to various representatives of the Law Office of Curtis O. Barnes between June 6, 2003 and September 30, 2003. On October 1, 2003, the Law Office of Curtis O. Barnes returned the account to Collect America, noting in the computer as of that date that there was "NO REM" (no remedy) available to collect on the debt because payment had been "REF" (refused) by Mr. and Mrs. Mammen. (Computer records, page 25, entry "10/01/2003 15:16:59.") The collectors at the Law Office of Curtis O. Barnes recognized that debt could not be collected without bringing an action in court, since Mr. Mammen had denied the debt was his, refused to pay, and repeatedly asserted that he was the victim of fraud.

On November 24, 2003 the Mammen account was reassigned from the Law Office of Curtis O. Barnes to Bronson and Migliaccio, LLP ("Bronson")(Computer records, page 24, entry "11/24/2003 15:37:47"). Every Bronson and Migliaccio debt collector who worked on debt collecting against Plaintiff Isaac Mammen, from November 26, 2003 (computer records, page 24, entry "11/26/2003 14:33:33") through August 17, 2005 (entry "8/17/2005 08:03:58"), had access to the computer records in which fraud was noted as a possibility. The computer records also include notations that Mrs. Mammen denied knowledge of the account, that Mr. Mammen refused to pay the debt which was not his, and that the Law Office of Curtis O. Barnes had concluded that there was "no remedy" ("NO REM") beyond bringing an action in court, because Mr. Mammen had refused to pay the debt. All letters sent by Bronson and Migliaccio, and all tele-

phone calls initiated by Bronson and Migliaccio, were done with access to all information within the computer records.

The only action taken by Defendant Corina Arroyo, as an employee of Defendant Bronson, was to send Plaintiff Isaac Mammen a dispute acknowledgment letter dated July 6, 2004.

The only action taken by Defendant Jill Anderson, as an employee of Defendant Bronson, was to send Plaintiff Isaac Mammen a verification of debt dated January 28, 2005, after Plaintiff requested verification of debt.

Defendant Bronson has a program to ensure compliance with FDCPA and FCCPA. Before Bronson employees begin debt collecting, Bronson employees take a three-day training program that covers federal and state debt laws and regulations. Bronson policy is to cease any and all communications with the consumer and request verification of debt once a consumer sends written communication disputing a debt or requesting no further contact regarding the debt. Bronson employees must take a written test on completion of the program. Bronson employees are trained to note the receipt of letters from debtors in the electronic account notes. The Mammen account notes document that procedures complying with the FDCPA were followed upon receipt of Mr. Mammen's June 7, 2004 letter.

Each Bronson employee has a laminated guideline sheet on collections, professional conduct, compliance with federal and state law, file maintenance, complaints and procedures, and examples of prohibited collection practices. Failure to adhere to the guidelines is grounds for disciplinary action and job termination.

Defendant Bronson also uses computer software and other devices to log, categorize, and monitor all debt collection activities. Communications to and from consumers are logged into the computer system with a description of the communication and notation. Attorneys and non-attorney managers review the account logs. Non-attorney managers are also trained to monitor debt collection activities. The firm also employs full time monitoring technicians whose sole responsibility is to monitor the firm's debt collection activities and report potential violations of the law or policy.

## IV. Discussion

In order to prevail on a FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection activity arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360–61 (S.D.Fla.2000)(quoting *Sibley v. Firstcollect, Inc.*, 913 F.Supp. 469, 470 (M.D.La. 1995)).

Claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. Sec. 1692k(d); *see Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir.1995). This case was filed on October 27, 2005. Any FDCPA claim based upon acts or omissions occurring before October 27, 2004 is time-barred.

### A. Plaintiffs' Claims

#### 1. 15 U.S.C. Sec. 1692c

Title 15 U.S.C. Sec. 1692c(c) provides:

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.....

The substance of this claim is that Defendant Bronson communicated with Plaintiff Isaac Mammen, after Plaintiff Mammen notified Defendant in writing that Plaintiff Mammen refused to pay the debt, and Plaintiff wished to cease further communications. This claim is based on Plaintiff's letter of December 8, 2003, directed to Mark F. Coldwell, Esq. (Dkt. 34–3).

Defendant Bronson denies receipt of the above letter in any form, except as an attachment to a subsequent letter. (Dkt. 51, Declarations Cawley and Coldwell). There is no entry in the computer records that reflects receipt.

■ Title 15 U.S.C. 1692c provides that notice by mail is complete upon receipt. Defendant Bronson has rebutted the presumption of receipt by Defendant's Declaration which details Defendant Bronson's practice and procedure as to incoming mail. Plaintiff provides no evidence in response to Defendant's Declarations that establishes that Defendant Bronson actually received Plaintiff's letter.

Plaintiff Isaac Mammen wrote to Defendant Bronson on June 6, 2004 (Dkt. 34–4). A copy of the December 8, 2003 letter was attached to the letter of June 6, 2004, which states:

.... Therefore, I request you to verify this thoroughly and let me know immediately your findings also **let all the concerned Credit Agencies know the fact.** Until you find the truth, please do not call me about this.

I wish to hear from you within 30 days of receipt of this letter, otherwise I have left with no other alternative except to handover this case to my Attorney.

■ Defendant Bronson acknowledged Plaintiff's request for verification of the debt in Defendant's letter dated July 6, 2004 (Dkt. 34–5). Defendant Bronson's response establishes that notice of Plaintiff's directive to cease communication was complete as of July 6, 2004, apart from Plaintiff's request for verification of debt. The Court notes that Plaintiff's request for verification of debt is a waiver of the "cease communication" directive with respect to verification of the debt.

Defendant Bronson provided Plaintiff with verification of the debt on January 28, 2005 (Dkt. 34–6), and further advised that Defendant was authorized to resume collection efforts under section 809(b) of the FDCPA.

Plaintiff Isaac Mammen responded to Defendant Bronson's verification of the debt in Plaintiff's letter dated February 7, 2005, which stated that the card activity was fraudulent, and requested more specific evidence such as credit card receipts and statements.

■ The Court notes that claims based on acts or omissions which occurred prior to October 27, 2004 are time-barred. After consideration, the Court grants Defendants' Motion for Summary Judgment as to this issue.

2. 15 U.S.C. Sec. 1692d

Title 15 U.S.C. Sec. 1692d states:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any

person in connection with the collection of a debt.

The substance of Plaintiffs' claim is that Defendants used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader. (Dkt. 34, Par. 18). Plaintiff Isaac Mammen also alleges that Defendants called Plaintiff's home several times between December 8, 2003 and June 7, 2004, despite Plaintiff's instruction not to do so. Plaintiffs also allege that Plaintiffs received another telephone call during which both Plaintiffs spoke with Defendant Bronson's representative. (Dkt. 34, Par. 13). Plaintiffs allege that in that telephone call, Defendant's representative told Plaintiff Shirley Mammen that she should pay Plaintiff Isaac Mammen's debt with her own Fleet Bank credit card "thus implying that she was as responsible for the bogus debt as her husband."

As to allegations of Paragraph 13, Plaintiff Isaac Mammen testified that the representative asked Plaintiff to agree to transfer the debt from Plaintiff Isaac Mammen's account to Plaintiff Shirley Mammen's account. Plaintiff Mammen did not agree to do that, and Plaintiffs cancelled Plaintiff Shirley Mammen's account. (Dkt.48–3, pp. 7–8). No charge was placed on Plaintiff Shirley Mammen's account as a result of the phone call.

Plaintiffs have cited sixteen telephone calls from Defendants over the course of two years. In his deposition, Plaintiff Isaac Mammen testified that after the attempted transfer to Plaintiff Shirley Mammen's account, Plaintiff received no further telephone calls. (Dkt.48–3, p. 9).

■■■■ Intent to annoy, abuse and harass may be inferred from the frequency of telephone calls, the substance of the phone calls, or the place to which phone calls are made. *Pittman v. JJ MacIntyre Co. of Nevada, Inc.*, 969 F.Supp. 609 (D.Nev.1997). In this case, Plaintiff Isaac

Mammen testified that phone calls were made to Plaintiff's personal cell phone while Plaintiff was work, while Plaintiff was on break. There is no evidence that the telephone calls were made continuously, or at a time of day a reasonable jury could find to be harassment. The sixteen telephone calls over the course of two years do not constitute conduct the natural consequence of which is to harass.

■■■■ Plaintiff Isaac Mammen testified that after Plaintiff told the representative that he had never lived in California and had never been to California, the representative told Plaintiff "You're lying, this is your account and you have to pay it." Plaintiff testified that, after Plaintiff argued with the collector about the above matters, the collector hung up the telephone without further discussion. (Dkt.48–3, p. 4, L.1–6) The Court notes that no transcripts of the telephone conversations have been provided to the Court. The Court assumes that the alleged telephone conversations were not recorded.

In *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir.1985), the Eleventh Circuit Court of Appeals held that claims under 15 U.S.C. Sec. 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse. In *Jeter*, Eleventh Circuit further noted that ordinarily the question of whether conduct harasses, oppresses or abuses will be a question for the jury. However, a claim under 1692d can be decided as a matter of law when the conduct complained of is outside the scope of conduct actionable under the statute.

In *Jeter, supra*, the Eleventh Circuit Court of Appeals discusses the language proscribed by Sec. 1692d: "However, it is clear that, when read in context, subsection (2) was meant to deter offensive lan-

guage which is at least akin to profanity or obscenity. Such offensive language might encompass name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks."

Plaintiff Isaac Mammen testified that he argued with the representative of Defendant Bronson, and Defendant said "You're lying," when Plaintiff Mammen denied that Plaintiff lived in or visited California, where the charges at issue were incurred. (Dkt. 48–3. Pp. 12–13.). That language is not akin to profanity or obscenity. Plaintiff has not testified that there was personal name-calling.

Defendant Bronson further argues that Plaintiffs cannot authenticate the telephone calls they received. Plaintiffs' deposition testimony shows that Plaintiffs were unable to provide detailed information about the telephone calls Plaintiffs received, including date, time, or day of the week, and Plaintiffs did not identify any specific caller through recognition of the caller's voice or other circumstantial evidence.

The Court further notes that, although Plaintiff mailed a letter dated 12/2003 to Defendant Bronson telling Defendant to cease communication, there is no evidence that Defendant received the letter until 6/2004. The Court further notes that to the extent this claim is based on acts prior to October 27, 2004, the claim is time-barred.

After consideration, the Court grants summary judgment as a matter of law in favor of Defendants as to this issue.

### 3. 15 U.S.C. Sec. 1692e

Title 15 U.S.C. Sec. 1692e provides, in pertinent part:

A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . . .

(10) The use of false representation or deceptive means to collect or to attempt to collect any debt or to obtain any information concerning a consumer.

In the Amended Complaint, Plaintiffs allege the following claims under 15 U.S.C. Sec. 1692e: 1) falsely represented the character, amount or legal status of a debt; 2) falsely represented or implied that the consumer committed any crime or other conduct in order to disgrace the consumer; 3) used false representation or other means to collect or attempt to collect a debt from the Consumer, or to obtain information concerning the Consumer; and 4) failed to disclose in one or more instances of communication with the Plaintiffs that the communications were from a debt collector, where such communications were not formal pleadings made in connection with a legal action.

Defendants argue that there is no evidence that any defendant told Plaintiffs they had committed a crime. In deposition, Plaintiff Isaac Mammen denied that this conduct occurred. (Dkt. 48–3, pp. 13–14). Plaintiff Isaac Mammen also testified that during the telephone calls Defendants identified themselves as debt collectors (Dkt. 48–3, p. 22).

██ Defendants argue that there is no evidence suggesting that Defendants used false or deceptive means, interpreted as knowing and intentional acts, to collect on the Mammen account. In deposition, Plaintiff Isaac Mammen testified that " 'Unfair' means this is not my money,"

(Dkt. 48–3, p. 23) or not [Plaintiff's] account. (Dkt. 48–3, p. 23). Plaintiff Mammen also testified that the "false representation" refers to the representation that Plaintiff Mammen owed the debt (Dkt. 48–3, p. 17).

Defendants further argue that Defendants are entitled to the bona fide error defense pursuant to 1692k of the FDCPA because the original creditor provided the erroneous account information to the debt collector, and the debt collector reasonably relied on that information.

Plaintiffs contend that Defendants' intent is irrelevant because the FDCPA is a strict liability statute, and any violation subjects the violator to liability.

■■■ The Eleventh Circuit Court of Appeals has adopted the "least sophisticated consumer" standard to analyze claims of deception or misrepresentation under Sec. 1692e. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985). This objective standard analyzes whether a hypothetical least sophisticated consumer would be deceived or misled by the debt collector's practices. *Id.* at 1175–76.

Based on Plaintiff Isaac Mammen's testimony, the Court finds there is no evidence to support Plaintiffs' claims for false, deceptive or misleading representation or means to collect a debt under Section 1692e. The Court notes that Plaintiff Isaac Mammen communicated with Fleet Bank to notify Fleet that the account contained fraudulent activity. The Barnes Law Office documented the possibility of fraud, and sent a fraud affidavit, which was not returned.

4. 15 U.S.C. Sec. 1692f

Title 15 U.S.C. Sec. 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (Including any interest, fee, charge, or expense incidental to the principal obligation) unless such an amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

■■■ In the Amended Complaint, Plaintiffs allege that Defendants violated 15 U.S.C. Sec. 1692f by attempting to collect an amount which was not expressly authorized by the agreement which created the debt, or was otherwise permitted by law. (Dkt. 34, Par. 20).

Defendants seek the entry of summary judgment as to this claim. Defendants argue that there are no facts which support this claim. Defendants further argue that it is undisputed that Defendants reasonably relied upon the furnishers of the debt information.

Based on the testimony of Plaintiff Isaac Mammen, the Court finds that there are no facts which support this claim. The Court grants Defendants' Motion for Summary Judgment as to this issue.

5. 15 U.S.C. Sec. 1692g

Title 15 U.S.C. Sec. 1692g, Validation of Debts, provides:

(a) Notice of debt, contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:

(1) the amount of the debt

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer, and a copy of such verification and judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt, or a copy of the judgment, or the name and address of the original creditor, and a copy of such verification or judgment or the name and address of the original creditor is mailed to the consumer.

In the Amended Complaint, Plaintiffs allege that Defendants violated 15 U.S.C. Sec. 1692g(b) by failing to cease collection of the debt, or any disputed portion thereof, after Plaintiffs notified the Defendants in writing that the debt was disputed. (Dkt. 34, Par. 21).

Defendant Bronson argues that, after receipt of Plaintiff Isaac Mammen's letter of June 7, 2004, Defendant ceased debt collection activities on the Mammen account, noted the dispute in Defendants' computer system, and requested verification of Plaintiff Mammen's account from CACV. A dispute acknowledgment letter dated July 6, 2004 was sent to Plaintiff Mammen, advising of the receipt of Plaintiff's letter and that verification of debt was being requested.

Defendant Bronson received verification of Plaintiff Isaac Mammen's debt in the form of a signed credit application, and, later, credit card statements from Fleet showing payments that had been made on the account prior to the account becoming delinquent. (Dkt. 51–2, Cawley Affidavit, Par. 11). Defendant Bronson did not engage in collection efforts until after Defendants notified Plaintiff Mammen of the verification of the debt in January, 2005. A verification of debt letter was sent to Plaintiff Mammen on January 28, 2005.

Defendants argue that neither CACV nor Bronson had any reason to know that the Mammen account was not valid. CACV relies on Fleet, the furnisher of the information concerning the debt, which warranted that the debt was valid and the information correct. Fleet never recalled the Mammen account. (Woodhouse Affidavit, Pars. 15, 16). CACV provided additional information to Plaintiff Isaac Mammen about the debt, consisting of account statements reflecting past payments on the account. CACV relies on Collect America to maintain records of its accounts, and retains compliance consultants to conduct regular field audits and training at the debt collection entities with which CACV accounts are placed.

Defendant Bronson had in place programs to ensure compliance with the FDCPA and FCCPA, including a comprehensive hiring process, a training regimen, and a system for monitoring compliance

with federal and state debt collection laws, as well as firm policies and procedures. (Cawley Affidavit).

In this case, Plaintiff Isaac Mammen contends that Plaintiff Mammen sent a letter to Defendants dated December 8, 2003, a copy of which is attached to the Amended Complaint (Dkt. 34). Defendants deny receipt of that letter, until receipt of the letter from Plaintiff Mammen dated June 7, 2004, to which Plaintiff attached a copy of the December 8, 2003 letter. Defendants argue that the first correspondence received from Plaintiff was the letter received on June 11, 2004. Plaintiff Mammen's letter to Defendant Bronson was not received within the statutory thirty-one-day period. There is no evidence that Defendants had notice of Plaintiff Mammen's request for verification of debt until June 11, 2004. In response to Plaintiff Mammen's request, Defendant Bronson provided verification of the debt to Plaintiff Mammen. After consideration, the Court grants Defendants' Motion for Summary Judgment as to this issue.

6. FCCPA Claims

█ Plaintiffs' FCCPA claims are based on the same facts as Plaintiffs' FDCPA claims. The Court has granted Defendants' Motion for Summary Judgment on all FDCPA claims, and also grants Defendants' Motion for Summary Judgment as to Plaintiffs' FCCPA claims. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment is **granted,** and Plaintiffs' Motion for Partial Summary Judgment is **denied.** The Clerk of Court shall enter a separate judgment in favor of Defendants and close this case.