Dianne L. McGRADY, Plaintiff,

v.

NISSAN MOTOR ACCEPTANCE CORPORATION and Nationwide Credit, Inc., Defendants.

No. CIV. A. 97–D–1488–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Nov. 2, 1998.

J. Michael Williams, James T. Gullage, Auburn, for Plaintiff or Petitioner.

Clement C. Torbert, Jr., Peter S. Fruin, Montgomery, for Nissan Motor Acceptance.

Ricahrd E. Broughton, Allison L. Alford, Montgomery, for Nationwide Credit.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are two separate motions for summary judgment. First, Defendants Nissan Motor Acceptance Corporation ("Nissan") filed its Motion For Summary Judgment on July 31, 1998, along with an accompanying brief in sup-

port of its motion ("Nissan's Br.") and an evidentiary appendix for the brief. On August 18, 1998, Plaintiff Dianne L. McGrady ("Plaintiff") filed her Brief In Response to Nissan's motion for summary judgment ("Pl.'s Nissan Resp."), to which Nissan filed a reply ("Nissan's Reply") and an accompanying evidentiary appendix on August 25, 1998.

Second, Defendant Nationwide Credit, Inc. ("Nationwide") filed its Motion for Summary Judgment along with its Brief in Support of Motion for Summary Judgment ("Nationwide's Br.") on September 29, 1998. Plaintiff filed her Brief In Opposition To Nationwide Motion For Summary Judgment ("Pl.'s Nationwide Resp.") on October 13, 1998.

After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant Nissan's motion for summary judgment is due to be granted in part and denied in part. The court further finds that Defendant Nationwide's motion for summary judgment is due to be denied.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2201 (declaratory judgment). The parties do not contest personal jurisdiction or venue.

## FACTUAL BACKGROUND

On October 7, 1995, Plaintiff purchased a 1990 Nissan automobile from Dyas Nissan, Inc. (Complaint ¶ 3.) The vehicle was financed with Defendant Nissan. (*Id.*) Plaintiff entered into a Retail Installment Contract ("Contract") with Nissan whereby Plaintiff agreed to pay monthly installments. (Nissan's Br. at 3.) When Plaintiff signed the contract with Nissan, she understood that there would be a late charge if payments were not paid in a timely manner. (*Id.* at 4.) Plaintiff also understood that the car would be repossessed if payments were not made. (*Id.* at 4.) Plaintiff did not understand that the car

could be sold upon repossession. (*Id.* at 4.)

Over the course of the ensuing year, Plaintiff made payments to Nissan, but she was delinquent in making some of these payments. (Complaint ¶ 4; Pl.'s Dep. at pp. 47, 48.) Throughout the year, Nissan employees called Plaintiff to inquire about delinquent payments. (*Id.* at p. 49.)

On or about October 10 or 11, 1996, an employee from Nissan, ("Ed") called Plaintiff regarding her delinquent payment. (Pl.'s Nissan Resp. at 2, 5.) Plaintiff and Ed reached an agreement whereby Plaintiff would pay Nissan one hundred thirty two dollars ($132.00). (*Id.* at 5.) Plaintiff and Ed did not discuss repossession of the car or whether the account would be considered current. (Pl.'s Nissan Resp. at 5; Pl.'s Dep. at 70–71.). Plaintiff sent a check for $132.00 to the Nissan employee on October 12, 1996. (Pl.'s Nissan Resp. at 5.)

On or about October 23, 1996, the vehicle was repossessed by Joiner's Recovery Service ("Joiner's"). (*Id.* at 2.) Joiner's was hired by Defendant Nissan to repossess the vehicle. (Nissan's Br. at 8–9.) At the time of the repossession, Plaintiff did not know the identity of the men who came to repossess the vehicle. (Pl.'s Nissan Resp. at 6.) One of the men informed Plaintiff that he was acting for Nissan. (*Id.* at 10.) Plaintiff was approximately one month behind in payment to Nissan. (*Id.* at 5.) The men repossessed the vehicle from the parking lot of Plaintiff's place of employment. (*Id.* at 2.) Plaintiff was employed by Trinity United Methodist Church in Opelika, Alabama, as the office manager. (Pl.'s Dep. at 11, 12.) The repossession occurred while Plaintiff was at work, and Plaintiff was left with no means of transportation. (Pl.'s Nissan Resp. at 2.)

At the time of the repossession, Plaintiff by telephone spoke with a Nissan employee and explained to the employee the arrangement she had made with the Nissan employee Ed on October 10, 1997. (*Id.* at

6.) The Nissan employee denied that there was any such arrangement. (*Id.* at 6.) The Nissan employee told Plaintiff that "there was nothing that [Plaintiff] could do, just hand over the keys, and the account was now closed, it was over." (Pl.'s Dep. at 69.)

When the car was repossessed, Plaintiff had personal property in the car. (Pl.'s Nissan Resp. at 6, 7.) Plaintiff attempted to retrieve her personal property at the time of repossession, but she was unable to recover all of it. (*Id.* at 6.) Among the items remaining in the vehicle were tapes, personal papers, toys, movies, a children's coat, and a blanket. (*Id.* at 7.) While Plaintiff retrieved the personal property she was able to, the Joiner's employee hooked up the car to be towed. (*Id.* at 6.) The Joiner's employee informed Plaintiff that she could retrieve the remainder of her personal belongings upon paying $45.00 to Joiner's. (*Id.* at 6.)

The repossession upset and embarrassed Plaintiff. (Complaint ¶ 6.) While the vehicle was repossessed, members of the church walked by and watched. (Pl.'s Nissan Resp. at 7.) Plaintiff cried to one of the associate pastors as the vehicle was taken away. (*Id.*)

Plaintiff did not know where the Joiner's employee worked or where he was taking the car. (*Id.* at 7.) The Joiner's employee told Plaintiff he would contact her with information regarding where she could retrieve her personal belongings. (*Id.* at 7.) The man never contacted Plaintiff. (*Id.* at 7.)

On the morning of October 24, 1996, Plaintiff called and spoke with the Nissan employee Ed. She asked Ed why the vehicle had been repossessed subsequent to their agreement. (*Id.* at 7.) Ed told Plaintiff he could not speak with her, and he informed her that she would have to pay $6,700.00. (*Id.*) Plaintiff's understanding was that upon repossession of the vehicle, the account was satisfied. (*Id.* at 9.)

Subsequent to the repossession, Plaintiff claims she received neither proper notice of her right to redeem the vehicle nor proper notice of the disposal of the vehicle. (*Id.* at 3, 8.) Thus, Plaintiff never knew where the vehicle was held or from where she could redeem it. (*Id.* at 8.)

Unbeknownst to Plaintiff, Defendant Nissan sold the vehicle and received $3,200.00 from the sale. (*Id.* at 8–9.) Plaintiff asserts that the sale occurred only two days after the repossession. (*Id.* at 15.) Defendant Nissan claimed it was still owed a remainder of $3,824.68. (*Id.* at 8–9.) Defendant Nissan contacted Defendant Nationwide Credit, Inc. ("Nationwide") and hired them to collect Plaintiff's account. (*Id.* at 3, 9.)

Plaintiff received three collection letters from Defendant Nationwide, dated March 4, 1997, March 27, 1997, and April 24, 1997. (Pl.'s Nationwide Resp. at 1.) Each letter contained the address P.O. Box 740639, Atlanta, GA 30374–0639, near the bottom of the letter, and the second letter designated Pamela Rushforth as the contact person. (*Id.* at Exs. A, B, C.)

On March 7, 1997, a Nationwide employee called Plaintiff at Plaintiff's place of employment and identified herself as Pamela Rushforth, saying that she was from Nationwide Credit and that Plaintiff owed a debt to Nissan. (Pl. Dep. at 116–117.) Plaintiff explained that she did not believe she owed Nissan anything because the vehicle had been repossessed. (*Id.* at 117.) Ms. Rushforth informed Plaintiff that the car had been sold and that Plaintiff still owed approximately thirty-seven hundred dollars ($3,700.00). (*Id.*) Plaintiff said she knew nothing about the car being sold. (*Id.*) Further, Plaintiff informed Ms. Rushforth that she would be unable to pay that debt. (*Id.*)

Ms. Rushforth called Plaintiff a second time on March 14, 1997. (*Id.* at 120.) Ms. Rushforth demanded that Plaintiff send seven hundred and fifty dollars ($750.00) overnight through the mail. (*Id.* at 121.) When Plaintiff said that she did not have the money, Ms. Rushforth said that Plaintiff could postdate the check to the end of the month. (*Id.*) Plaintiff refused to send

a postdated check, and Ms. Rushforth said that if Plaintiff did not pay, legal action would be taken. (*Id.*) Ms. Rushforth used a rude tone of voice. (*Id.* at 121–122.)

On March 17, 1997, Ms. Rushforth called Plaintiff at Plaintiff's place of employment numerous times and was rude to the receptionist when informed that Plaintiff was not available. (Pl.'s Nationwide Resp. Ex. E.) Ms. Rushforth left messages that "Pam" called. (*Id.* at Exs. E and G.) Ms. Rushforth asked to speak to someone who could verify Plaintiff's employment, and the financial secretary spoke with her. (*Id.* at Exs. E and F.) Ms. Rushforth inquired about Plaintiff's length of employment and salary. (*Id.*) The financial secretary refused to answer these questions. (*Id.*) Ms. Rushforth also called Plaintiff's home numerous times that day and left messages that "Pam" called. (*Id.* at Ex. E.)

On March 17, 1997, Plaintiff sent Nationwide a letter in which she requested that Nationwide not call her at work and also informed Nationwide that she did not owe Nissan any money because of the repossession. (Pl.'s Nationwide Resp. at 2.) In the letter Plaintiff also requested that all future contact be restricted to the mail. (*Id.*) Nationwide continued to call Plaintiff, her parents, and her employer. (*Id.* at 2–3.)

On March 19, 1997, another Nationwide employee called Plaintiff at work several times and was told Plaintiff could not speak with him. (*Id.*) On March 21, 1997, a third Nationwide employee called Plaintiff at work, and Plaintiff told her not to call her at work. (*Id.*)

During the last week of March, Ms. Rushforth called Plaintiff at home and spoke with Plaintiff's mother. (*Id.*) Plaintiff's mother told her not to call again. (*Id.*) Ms. Rushforth yelled at Plaintiff's

mother. (*Id.*) Nationwide employees continued to call Plaintiff throughout April and May of 1997. (Pl.'s Nationwide Resp. at 5.)

Plaintiff filed her complaint on September 5, 1997, in the Circuit Court of Lee County, Alabama, claiming that Defendant Nissan converted her personal property during the repossession (Count I); Defendant Nissan violated § 7–9–501, et seq. (Count II); and Defendants Nissan and Nationwide violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Count III).[1] Defendants Nissan and Nationwide removed the action to this court on October 8, 1997. Defendants Nissan and Nationwide separately moved for summary judgment on July 31, 1998 and September 29, 1998, respectively.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact,

1. The court notes that some confusion has arisen concerning Plaintiff's claims. Defendant Nationwide apparently reads Counts I and II as being asserted against it as well as against Defendant Nissan. (Nationwide's Br. at 5–6.) The court, however, construes Counts I and II as being brought against Defendant Nissan alone. Thus, the court finds that Defendant Nationwide's motion for summary judgment concerning Counts I and II is due to be denied as moot.

since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue· for trial." Fed. R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## DISCUSSION

## I. CONVERSION OF PLAINTIFF'S PERSONAL PROPERTY

In Count One of her Complaint, Plaintiff alleges that Defendant Nissan converted Plaintiff's personal property that remained in the vehicle after the repossession. Defendant Nissan contends that Count I is barred as a matter of law because (1) Plaintiff cannot prove a *prima facie* case of conversion, and (2) Defendant Nissan is not liable for any purported conversion by an independent contractor. (Nissan's Mot. at 1) The court finds that Plaintiff has established a *prima facie* case of conversion. The court further finds that an issue of material fact exists concerning whether an agency relationship between Defendant Nissan and Joiner's existed based on apparent authority. Therefore, the court finds that summary judgment is due to be denied for Count I of the complaint.

### A. *Plaintiff establishes a prima facie case of conversion*

It is undisputed that when Joiner's repossessed the vehicle, some of Plaintiff's personal property located inside the vehicle was taken. (Pl.'s Nissan Resp. at 2; Nissan's Br. at 8.) Plaintiff claims that she tried to retrieve her personal property but was unable to because she was upset and because Joiner's took the vehicle away. (Pl.'s Nissan Resp. at 6.) Plaintiff claims that the personal property was converted. Defendant Nissan claims that no conversion occurred because Plaintiff chose not to retrieve her personal property. (Nissan's Br. at 11.) Defendant further claims that no conversion occurred because Plaintiff failed to request the return of her property. (*Id.*)

Under Alabama law, "[t]o sustain a claim of conversion, there must be (1) a

wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property." *Drennen Land & Timber Co. v. Privett*, 643 So.2d 1347, 1349 (Ala.1994). Furthermore, the Alabama Supreme Court has stated:

> The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, when the plaintiff has a general or special title to the property and possession or the immediate right of possession. A plaintiff cannot recover in an action of trover unless at the time of the conversion, he or she had a general or special right to the property and possession or an immediate right of possession.

*Id.* (quoting *McCain v. P.A. Partners Ltd.*, 445 So.2d 271 (Ala.1984)).

■ Conversion may occur when, during a repossession, personal property located in the repossessed vehicle is taken. *See Penttala v. David Hobbs BMW*, 698 So.2d 137 (Ala.Civ.App.), *cert. denied* (Ala. 1997). In *Penttala*, a third party hired the defendant to repossess the plaintiff's vehicle. *Id.* at 138. The plaintiff presented evidence that when the defendant repossessed the vehicle, the defendant took some of the plaintiff's property located in the vehicle. *Id.* The trial court granted summary judgment for the defendant without opinion. *Id.* The Court of Civil Appeals reversed, holding that "[Plaintiff] has presented substantial evidence raising a question of fact as to whether the defendants' repossession of the Mercedes was a wrongful detention of her personal property" because "the certificate of title that allowed the defendants to repossess the [plaintiff's vehicle] … does not apply to [Plaintiff's] personal property that was taken with the vehicle." *Id.* at 140, 141.

■ Likewise, here the court finds that Plaintiff's contentions satisfy the require-ments to prove a *prima facie* case. The court rejects Defendant Nissan's contention that Plaintiff "chose" not to retrieve her property because the facts must be construed in the light most favorable to the nonmoving party. *See Adickes*, 398 U.S. at 157, 90 S.Ct. 1598.

Further, Defendant's argument that no conversion occurred because Plaintiff failed to request the return of her property (Def.'s Mot. at 11) is unpersuasive. The court finds that Defendant misapplies *Stallworth v. Continental Real Estate Management, Inc.*, 582 So.2d 534 (Ala. 1991). In *Stallworth*, the Alabama Supreme Court held that where "a taking was lawful, a demand and refusal are necessary to constitute conversion." *Id.* at 537. In the instant case, although the taking of the vehicle was lawful, the taking of Plaintiff's personal property as related by Plaintiff was not lawful. *See Penttala*, 698 So.2d at 141. Therefore, the Plaintiff was not required to request the return of her personal property.

### B. *A material issue of fact exists regarding whether there was an agency relationship by apparent authority*

Under Alabama law, "[a]gency is generally a question of fact to be determined by the trier of fact," and "[w]hen a defendant's liability is to be based on agency, agency may not be presumed." *Malmberg v. American Honda Motor Co., Inc.*, 644 So.2d 888, 890 (Ala.1994). In the summary judgment context, when "a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency." *Id.*

■ To determine whether an agency relationship existed by apparent authority [2], the test to be applied is whether "the

---

**2.** The court finds that Plaintiff has failed to allege facts supporting a finding of actual authority. *See Malmberg*, 644 So.2d at 890 (holding that test of actual agency is "whether the alleged principal exercised a right of control over the manner of the alleged agent's performance").

potential principal[ ] [held] the potential agent out to third parties as having the authority to act." *Malmberg*, 644 So.2d at 891. The court finds that Plaintiff provides sufficient evidence concerning apparent authority to demonstrate that an issue of material fact exists.

■ In her deposition, Plaintiff states that when the car was repossessed, she spoke with a Nissan employee. During that conversation, Plaintiff contends that the Nissan employee told Plaintiff that there was nothing that Plaintiff could do and that Plaintiff should give the car keys to the man repossessing the vehicle. (Pl.'s Dep. at 69.) The court finds this evidence sufficient to create an issue of material fact as to whether Defendant Nissan held out Joiner's to Plaintiff as having the authority to act and, therefore, Defendant Nissan is not entitled to summary judgment on this issue.

In sum, the court finds that the evidence provided by Plaintiff establishes a *prima facie* case for conversion. The court further finds that there is an issue of material fact exists concerning whether there was an apparent agency relationship between Defendant Nissan and Joiner's. Therefore, the court finds that summary judgment is due to be denied for Count I of Plaintiff's complaint.

## II. ALABAMA CODE § 7-9-501 ET SEQ.

In Count II, Plaintiff claims that Defendant Nissan violated § 7-9-501, et seq., by wrongfully repossessing the vehicle, failing to provide proper notice of the sale and deficiency claimed, and selling the vehicle in an improper fashion. (Pl.'s Complaint at 4.) The court construes these claims as alleging violations of §§ 7-9-503 and 7-9-504 of the Alabama Code. Defendant Nissan moves for summary judgment on Count Two on the ground that no violation occurred. The court finds that summary judgment on Count Two is due to be granted.

### A. *Wrongful Repossession*

Section 7-9-503 of the Alabama Code provides for a secured party's right to take possession after default: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace." Ala.Code 1975 § 7-9-503; *see also Flanagan v. World Omni Fin. Corp.*, 539 So.2d 248, 250 (Ala.1989). The issues to be addressed are whether a material issue of fact exists and whether Defendant Nissan is entitled to judgment as a matter of law concerning: (1) whether Plaintiff defaulted; (2) whether a breach of the peace occurred; and (3) whether Defendant Nissan is liable for such breach, if any. The court finds that although Plaintiff defaulted on the Contract, Defendant Nissan did not breach the peace while repossessing the vehicle.

### i. *Plaintiff Was In Default*

■ First, the court finds that Plaintiff was in default on the Contract. On October 7, 1995, Plaintiff entered into the Contract with Nissan, whereby Plaintiff promised "to pay the Amount Financed plus Finance Charge at the Annual Percentage Rate as disclosed on the face of this contract hereof, in addition to the total down payment, at the times and in the amounts set forth on the fact of this contract." (Pl.'s Dep. Ex. 1.) Section F of the Contract states that a default occurs when a party fails to make payment when due. (Pl.'s Dep. Ex. 1, § F.) Plaintiff was admittedly "behind about a month in payments" at the time of the repossession (Pl.'s Nissan Resp. at 5.), and, therefore, in default.

Nissan's previous acceptance of eleven delinquent payments does not change the nature of Plaintiff's obligations under the Contract. "[A] security agreement is effective according to the terms expressed in the agreement." *Williams v. Ford Motor Credit Co.*, 435 So.2d 66, 68 (Ala.1983). The express terms of the Contract state

that "[Plaintiff] agree[s] that if we accept monies in sums less than those due or make extensions of due dates of payments under this contract, doing so will *not* be a waiver of any later right to enforce the contract terms as written." (Pl.'s Dep. Ex. 1, § I(9) (emphasis added)).

Additionally, Plaintiff's negotiations with the Nissan employee, Ed, did not alter the terms of the Contract. The Contract states that "[a]ll of the agreements between us and you are set forth in this contract and no modification of this contract shall be valid *unless it is made in writing* and signed by you and us, except as otherwise permitted by statute or required by law." (Pl.'s Dep. Ex. 1, § I(4) (emphasis added)). Plaintiff does not claim, and no proof is offered, that any agreement with Ed was made in writing and signed by both Plaintiff and Nissan; thus, the Contract was not modified and Plaintiff is held to the terms of the Contract. Since Plaintiff was admittedly one month behind in payment as of the time of the repossession, she was in default.

### ii  *Joiner's was an agent of Defendant Nissan for the purpose of the repossession of the vehicle*

It is undisputed that Defendant Nissan did not physically repossess the vehicle itself; rather, Joiner's repossessed the vehicle. Defendant Nissan would be liable for a breach of the peace, therefore, only if Joiner's was an agent of Defendant Nissan.

■ The general tenets of Alabama agency law are explained above. (See § I.B., supra.) These general rules have exceptions, however, one of which is applicable here.

[A]n employer is responsible for the manner of the performance of certain non-delegable duties, though done by an independent contractor. An employer who by contract or law owes a specific duty to another cannot escape liability for a tortious performance by reason of the employment of an independent contractor.

*General Fin. Corp. v. Smith,* 505 So.2d 1045, 1047 (Ala.1987) (citations omitted). In *Smith,* the Alabama Supreme Court held that a secured creditor's duty pursuant to § 7–9–503 is non-delegable, that is, the secured creditor could not delegate "liability resulting from a breach of the peace." *Id.*

Accordingly, in the instant case, because Defendant Nissan cannot delegate its duty, Defendant Nissan would be liable if a breach of the peace occurred during Joiner's repossession of the vehicle.

### iii.  *No Breach of Peace Occurred*

Pursuant to both state law and the terms of the Contract, Defendant Nissan as a secured creditor has the right to take possession of the vehicle as long as it does not cause a breach the peace in the process. (Pl.'s Dep. Ex. 1, § F.); Ala.Code 1975 § 7–9–503. "[T]he secured creditor, in exercising the privilege to enter upon the premises of another to repossess collateral, may not perpetrate '[a]ny act or action manifesting force or violence, or naturally calculated to provide a breach of the peace.'" *Madden v. Deere Credit Services, Inc.,* 598 So.2d 860, 865 (Ala.1992). The issue here is whether Defendant Nissan's agent caused a breach of the peace.

Although the Alabama Code does not define "breach the peace," the Alabama Supreme Court has recognized a "breach of the peace" to be "a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace, or, as is sometimes said, it includes any violation of any law enacted to preserve peace and good order." *Madden,* 598 So.2d at 865. A creditor may not "resort to constructive force, such as 'threats or intimidation,' ... or to 'fraud, trickery, chicanery, and subterfuge.'" *Id.* at 865.

■ Plaintiff provides no evidence that Defendant Nissan's agent caused a breach of the peace. Plaintiff contends only that:

the totality of the circumstances and the testimony of the Plaintiff establishes that she was under duress, crying, etc., when her vehicle was repossessed. She was further not given an opportunity to get all her personal items out of the car. Then, information concerning the whereabouts of her property was refused to be given her. The repossession of the vehicle was not peaceable under the circumstances... [T]here is jury question [sic] as to the voluntariness of the repossession and whether or not this was done without undue coercion by the representatives of the Defendant. This was certainly not done in a peaceful manner, since the Plaintiff was done in the state of mind that she was, particularly in front of the numerous church members who were attending Wednesday night supper.

(Pl.'s Nissan Resp. at 13.) The court finds that these contentions do not demonstrate that any breach of the peace was *caused by* Defendant Nissan's agent. Indeed, Plaintiff in her deposition admits that Defendant Nissan's agent did not act to breach the peace:

Q. Did you and this repossession man have any arguments or cross words?

A. No.

Q. Was he courteous, or as courteous as he could be under the circumstances?

A. Yes.

Q. Were you courteous back to him as far as you remember?

A. Yes.

Q. What about the other man with him, did you have any -

A. No contact.

\* \* \* \* \* \*

Q. So neither of those men cussed you out or threatened or did any of that?

A. No.

(Pl.'s Dep. pp. 75–76.)

The court is aware that "whether the actions taken by a secured creditor to re-possess collateral involves excessive force or an unreasonable likelihood of a breach of the peace in light of the time and manner in which the repossession occurred is ordinarily a question of fact to be determined by a jury." *Madden,* 598 So.2d at 867. In the present case, however, even if all of Plaintiff's allegations were accepted as true, Defendant Nissan would be entitled to judgment as a matter of law.

In light of the above, the court finds that Defendant Nissan's motion for summary judgment is due to be granted as to Plaintiff's claim that Defendant Nissan violated Alabama Code § 7–9–503 by wrongfully repossessing the vehicle.

### B. *Improper Notice*

Count Two of Plaintiff's complaint alleges that Defendant Nissan violated Alabama Code § 7–9–504 by failing to provide proper notice prior to the sale of the vehicle. (Pl.'s Complaint at 4.) Plaintiff's argument is twofold: (1) Plaintiff never received notice from Defendant Nissan; and (2) the notice that Defendant Nissan claims to have sent was deficient in content. (Pl.'s Nissan Resp. at 14–15.) Defendant Nissan moves for summary judgment on Plaintiff's Claim II, arguing that it did not violate Alabama Code § 7–9–504 because Defendant Nissan sent proper notice to Plaintiff in a timely manner. The court agrees with Defendant Nissan.

### i. *Notice was sent*

■ Alabama Code § 7–9–504(3) provides for the sale of collateral pursuant to certain measures, including: "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be *sent* by the secured party to the debtor." Ala.Code 1975 § 7–9–504(3) (emphasis added). The Alabama Supreme Court has interpreted this provision such that "[t]he requirement that reasonable notification be sent to the debtor ... clearly does not require that the debtor receive it." *Low*

*Cost Cars, Inc. v. Munn,* 399 So.2d 277, 280 (Ala.1981). Thus, as long as proper notice is sent, it need not be received by the debtor to be in accordance with § 7–9–504(3).

■ The Alabama Code defines "send" as follows: "to deposit in the mail or deliver for transmission by any other usual means of communications with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances." Ala.Code 1975 § 7–1–201(38). No evidence in the record indicates that the notice was sent in an inappropriate manner. Indeed, Plaintiff acknowledged at her deposition that the "Statement of Sale" contained the correct name and address. (Pl.'s Dep. at 97 and Ex. 8.) Thus, no question of fact exists on this issue. *See Stone v. Cloverleaf Lincoln–Mercury, Inc.,* 546 So.2d 388 (Ala.1989).

### ii. *Notice content was proper*

■ Alabama Code § 7–9–504(3) requires that the notice contain "reasonable notification of the time after which any private sale or other intended disposition is to be made." Ala.Code 1975 § 7–9–504(3). Defendant Nissan's notice to Plaintiff stated: "The vehicle ... will be sold at a *private sale* any time after 10 days from the Date of Notice shown above unless REDEEMED by you at any time prior to such sale." (Pl.'s Resp. Ex. B (emphasis added)). Because Defendant Nissan planned on selling the vehicle at a private sale, Defendant Nissan need only have informed Plaintiff "of the time after which" such sale was to be made. The notice clearly contained such information.

Because the court determines that notice containing proper content was sent, the court finds that summary judgment is due to be granted in favor of Defendant Nissan on Plaintiff's claim that Defendant Nissan violated Alabama Code § 7–9–504.

### C. *Improper disposal of vehicle*

In Count II of the Complaint, Plaintiff claims that Defendant Nissan may have improperly disposed of the vehicle, which the court construes as an alleged violation of Ala.Code § 7–9–504. Alabama law provides that a secured party is subject to certain limitations when disposing of collateral. "The principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith (Section 7–1–203) and in a commercially reasonable manner. See Section 7–9–504." Ala.Code § 7–9–507, Comment 1. "[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Ala.Code § 7–9–504.

■ Plaintiff contends that Defendant Nissan sold the car for too low a price. (Pl.'s Nissan Resp. at 23.) "The sufficiency of the price obtained at a sale ... is one of the 'terms' of the disposition, and is relevant to whether the sale was commercially reasonable." *Farmers & Merchants Bank of Centre v. Hancock,* 506 So.2d 305, 311 (Ala.1987). However, "a low price alone does not establish that a sale is commercially unreasonable." *Waide v. Tractor and Equip. Co.,* 545 So.2d 1327, 1329 (Ala.1989).

■ Plaintiff also alleges bad faith. On the notice that Defendant Nissan claims to have sent to Plaintiff, Defendant Nissan stated that the sale would not occur until ten days from the date on the notice, October 25, 1996. (Pl.'s Nissan Resp. Ex. B.) Plaintiff asserts that "the records of Nissan indicate that there was a credit for the sale amount on their books two day after the repossession" thus indicating "that the private sale occurred prior to any expiration of ten days." (Pl.'s Nissan Resp. at 15.) Plaintiff provides the court with the Statement of Sale, but this document does not indicate the date of the sale. (*Id.* at Ex. C.) The court finds that Plaintiff's conclusory allegation is insufficient and Plaintiff thus has not satisfied her

burden pursuant to Fed.R.Civ.P. 56. Thus, the court finds that summary judgment is due to be granted on this claim.

## III. FAIR DEBT COLLECTION PRACTICES ACT

### A. *Plaintiff's FDCPA Claim Against Nissan*

Plaintiff in Count Three of her complaint alleges that Defendant Nissan violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Defendant Nissan moves for summary judgment based on its argument that it is not a "debt collector" under the FDCPA. Plaintiff provides no response to Defendant Nissan's argument in her Response. The court finds Defendant Nissan's argument to be persuasive, and Count Three is due to be dismissed as to Defendant Nissan.

The FDCPA was enacted "to eliminate abusive debt collection practices by *debt collectors,*" 15 U.S.C. § 1692(e) (emphasis added), and the provisions of the Act apply almost exclusively to debt collectors. *See* 15 U.S.C. § 1692–1692n. The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or *due or asserted to be owed or due another.*" 15 U.S.C. § 1692a(6) (emphasis added).[3]

■ Generally, "actual creditors ... are not subject to the act." *Id.* at 1207 (citation omitted).[4] Automobile finance companies, in particular, are not subject to the FDCPA. "Automobile finance companies which make loans to automobile purchasers do not have as their principal business purposes the collection of debts and they do not generally collect debts due to others." *James v. Ford Motor Credit Co.,* 842 F.Supp. 1202, 1206 (D.Minn.), *aff'd,* 47 F.3d 961 (8th Cir.1995). The court finds that Defendant Nissan is an actual creditor and not a debt collector and, therefore, is not subject to the FDCPA in the present context.

■ The court further finds that Defendant Nationwide was not an agent of Defendant Nissan. Plaintiff fails to provide any evidence that Defendant Nissan exercised any right of control over the manner of Defendant Nationwide's performance. Thus, pursuant to *Malmberg,* agency by actual authority is not demonstrated. 644 So.2d at 890. Further, Plaintiff fails to provide any evidence indicating that Defendant Nissan held out Defendant Nationwide to third parties as having the authority to act. Therefore, pursuant to *Malmberg, supra,* agency by apparent authority has not been established. Thus, Defendant Nissan is not be liable for any violation of the FDCPA committed by Defendant Nationwide.

### B. *Plaintiff's FDCPA Claim Against Nationwide*

Plaintiff in Count Three of her complaint alleges that Defendant Nationwide violated the FDCPA, 15 U.S.C. § 1692, et seq., by "employing improper tactics to attempt to collect a debt on behalf of Nissan." (Complaint ¶ 11.) Defendant Nationwide moves for summary judgment. As explained below, the court finds that summary judgment is due to be denied.

#### i. *Alleged violation of 15 U.S.C. § 1692d*

■ Plaintiff claims that Defendant Nationwide harassed her in violation of the FDCPA. (Complaint ¶ 19.) To support this claim, Plaintiff provides evidence that Defendant Nationwide, or an agent thereof, called her numerous times from March 7, 1997 through June 20, 1997, was

---

**3.** The FDCPA definition of "debt collector" contains seven exceptions, none of which are applicable here. *See* 15 U.S.C. § 1692(a)(6).

**4.** An exception to this general rule arises when a creditor collects its own debts under a different name, but this exception is not applicable here. *See Harrison v. NBD Inc.,* 968 F.Supp. 837, 841 (E.D.N.Y.1997).

"very rude and abrupt" to and even yelled at Plaintiff's mother on the telephone, called Plaintiff at home and at work after being asked to not do so, called Plaintiff's employer to ask questions concerning Plaintiff's employment, and left messages stating only that "Pam" called. (Pl.'s Nationwide Br. at 2–4.) The court construes these claims as alleging violations of 15 U.S.C. § 1692d, which states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir.1985). Further, "[c]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse." *Jeter*, 760 F.2d at 1179.

Defendant Nationwide conclusorily asserts that it did not violate any of the listed subsections of § 1692d and, therefore, summary judgment should be granted in its favor. (Nationwide's Br. at 7–8.) For instance, Defendant Nationwide states that "[a]lthough a number of telephone calls were made to Ms. McGrady, there is no evidence that they were made repeatedly or continuously," and thus § 1692d(5) was not violated. (Nationwide's Br. at 8.) Defendant Nationwide further claims that "[a]t all times, it appears that Nationwide identified itself; therefore, there is no violation for failing to meaningfully disclose the caller's identity" and therefore § 1692d(6) was not violated. (Nationwide's Br. at 8.) The court finds, however, that Plaintiff has provided sufficient evidence that a rational trier of fact could find for that Defendant Nationwide violated §§ 1692d(5) and (6). Thus, the court finds that summary judgment on these point is due to be denied. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Further, Defendant Nationwide fails to address whether a violation of § 1692d may have occurred by conduct not speci-

fied therein. Although § 1692d enumerates six specific examples of conduct which violate that section, section 1692d "is explicitly not limited to the conduct proscribed by subsections (1)-(6)." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir.1985).

In *Rutyna v. Collection Accounts Terminal, Inc.*, the defendant debt collector sent the plaintiff a letter stating that the debt collector's "field investigator has now been instructed to make an investigation in your neighborhood and to personally call on your employer." 478 F.Supp. 980, 981 (N.D.Ill.1979) (cited with approval in *Jeter*, 760 F.2d at 1180 n. 12). The plaintiff became upset and feared that the investigator's investigation would inform her neighbors of her debt and related medical problems. *Id.* Although the alleged conduct did not fit within one of the six specifically prohibited types of conduct listed in § 1692d, the court found that the defendant's letter violated the general standard articulated in § 1692d. *Id.* at 981–982. The Eleventh Circuit in *Jeter* characterized the conduct in *Rutyna* as "the type of coercion and delving into the personal lives of debtors that the FDCPA in general, and § 1692 in particular, was designed to address." *Jeter*, 760 F.2d at 1180 n. 12.

As in *Rutyna*, here the court finds that Plaintiff alleges conduct which violates § 1692d, even though the alleged conduct may not fit within one of the specified categories within that section. Defendant Nationwide's numerous phone calls, treatment of Plaintiff's mother, and leaving of messages that "Pam called" are examples of conduct that could be considered conduct "the natural consequence of which is to harass, oppress, or abuse." 15 U.S.C. § 1692d.

In light of the foregoing, the court finds that summary judgment on whether 15 U.S.C. § 1692d was violated is due to be denied.

### ii. *Alleged violation of 15 U.S.C. § 1692c(c)*

The FDCPA states that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c).[5] This provision further provides that "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt." *Id.*

■■■ Plaintiff claims that she sent a cease and desist letter to Defendant Nationwide on March 17, 1997, wherein she requested that Defendant Nationwide cease contacting Plaintiff at her place of employment and restrict all future contact to be done through the mail. (Pl.'s Nationwide Resp. Ex. D.) Plaintiff claims she sent this letter to a P.O. Box address in Atlanta, Georgia, which she obtained from letters sent to her from Defendant Nationwide. (Pl.'s Nationwide Resp. at 2.) Plaintiff further claims she mailed the letter personally at the post office, and the letter was never returned to Plaintiff. (*Id.*) Defendant Nationwide argues that Plaintiff forwarded the letter to an incorrect or incomplete address and that Plaintiff offers no evidence that the letter was actually received by Nationwide and, therefore, summary judgment should be granted. (Nationwide's Br. at 8.)

The court notes that there is a presumption that "every letter, properly addressed and stamped, is duly transported and delivered to the addressee." *Pizitz v. Ryan*, 403 So.2d 222, 223 (Ala.1981) (quoting *Calkins v. Vaughan*, 217 Ala. 56, 114 So. 570 (Ala.1927)). However, "where ... the fact of posting is disputed, a question of fact for determination by the trier of fact is presented." *Id.* As the fact of posting is disputed in the instant case, the court finds that a genuine issue of material fact exists

and, therefore, summary judgment is due to be denied on this point.

### iii. *Alleged violation of § 1692f*

■■■ Plaintiff also claims that Defendant Nationwide violated the FDCPA by demanding that Plaintiff send a post-dated check even though Defendant Nationwide knew that Plaintiff had insufficient funds to cover such check. (Pl.'s Nationwide Br. at 2; Pl.'s Dep. at 124–126.) The court construes this claim as alleging a violation of § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f provides a nonexhaustive list of types of conduct which violate § 1692f.

The court notes that Defendant Nationwide failed to address Plaintiff's argument in either its Motion for Summary Judgment Brief or its Reply. Thus, the court finds that Defendant Nationwide has failed to satisfy its burden of establishing that it is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The court further finds that Plaintiff provided sufficient evidence to allow a rationale trier of fact to find that § 1692f was violated. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. Accordingly, the court finds that Defendant Nationwide is not entitled to summary judgment on this claim.

### IV. DEFENDANT NATIONWIDE'S LIABILITY FOR MENTAL ANGUISH DAMAGES PURSUANT TO THE FDCPA IS NOT LIMITED TO $1000

Defendant Nationwide moves the court for summary judgment on the issue of damages. (Nationwide's Br. at 10.) The FDCPA provides in pertinent part:

[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to

---

5. Section 1692c(c) contains three exceptions to this general rule, none of which are applicable to the present case. *See* 15 U.S.C. § 1692c(c)(1)-(3).

such person in an amount equal to the sum of (1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.

15 U.S.C. § 1692k. Defendant Nationwide asserts that Plaintiff does not claim any actual damages and, therefore, Plaintiff's potential recovery from Defendant Nationwide should be limited to a maximum of $1,000.00. (Nationwide's Br. at 11.)

Although Plaintiff does not claim any physical injury or out-of-pocket loss caused by Defendant Nationwide's alleged violations of the FDCPA, Plaintiff claims that she "suffered mental anguish and has been upset and has been treated rudely." (Complaint ¶ 12.) The court notes that the issue of whether mental anguish constitutes actual damages pursuant to the FDCPA is a matter of first impression in this Circuit. Thus, the court looks to other jurisdictions for guidance.

In *Carrigan v. Central Adjustment Bureau, Inc.*, the District Court for the Northern District of Georgia determined that damages for mental anguish constitute actual damages within the purview of 15 U.S.C. § 1692k(a)(1). 502 F.Supp. 468 (N.D.Ga.1980). In making this determination, the court decided that "[s]ince the particular section of the Act which has been violated is designed to stop harassment of debtors through repeated contact by the creditor, the Court holds that Plaintiff's entitlement to damages here should turn on whether or not he would be entitled to collect damages, were this a cause of action for the intentional infliction of mental distress." *Id.* at 470. Georgia law permits recovery of damages for mental suffering and emotional anguish "where there is intentional infliction of mental distress, without a showing of contemporaneous physical harm." *Id.* Thus, the court determined such damages to be recoverable as actual damages pursuant to 15 U.S.C. § 1692k(a)(1). *Id.*

The District Court of Delaware employed different reasoning to reach the same conclusion. In *Smith v. Law Offices of Mitchell N. Kay*, the court found to be proper a jury instruction stating that "[a]ctual damages not only include any out of pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish or emotional distress." 124 B.R. 182, 185 (D.Del.1991). Rather than compare the FDCPA with a state law claim, the court reached this conclusion by comparing the FDCPA with the Fair Credit Reporting Act ("FCRA"):

> Under the FCRA, a statutory scheme very similar to the FDCPA, a plaintiff who proves a violation of the act is entitled to actual damages for emotional distress arising from the violation, without first having to prove a right of action under state law. This Court similarly holds that, when a violation of the FDCPA has been established, actual damages for emotional distress can be proved independently of state law requirements.

*Id.* at 188.

■ In the instant case, the court finds that damages for mental anguish are recoverable pursuant to 15 U.S.C. § 1692k(a)(1). First, the court agrees with the *Smith* court's analysis analogizing the FDCPA to the FCRA. Further, under the methodology employed by the *Carrigan* court, damages for mental anguish are recoverable under 15 U.S.C. § 1692k(a)(1) because Alabama law provides that such damages are recoverable pursuant to a cause of action for intentional infliction of mental distress. *See Continental Cas. Ins. Co. v. McDonald*, 567 So.2d 1208, 1211 (Ala.1990).

The court also notes that under Alabama law, the common law claim of invasion of privacy provides for recovery of unlimited mental anguish damages. *See, e.g., Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 177, 132 So.2d 321 (1961) (holding that a debtor has a cause of action sounding in invasion of privacy "for injurious conduct on the

part of the creditor which exceeds the bounds of reasonableness"). As damages for mental anguish could be unlimited pursuant to an invasion of privacy claim, the court finds that damages for mental anguish should also be potentially unlimited pursuant to the FDCPA.

Finally, the court finds that common sense dictates finding that mental anguish damages falls within the purview of 15 U.S.C. § 1692k(a)(1). Absent such a finding, a debtor suffering mental anguish without pecuniary or physical damages would be limited to recovering a maximum amount of $1,000 pursuant to the FDCPA. The court finds this to be an entirely unsatisfactory result as the harassment suffered by a debtor at the hands of a debt collector could well cause more than $1,000 in mental anguish damages. Just as Alabama law permits unlimited recovery for mental anguish damages in claims brought for intentional infliction of emotional distress and invasion of privacy, the court interprets the term "actual damages" in 15 U.S.C. § 1692k(a)(1) as encompassing mental anguish damages and thus allowing unlimited recovery in this context. The court therefore finds that summary judgment is due to be denied on this point.

## V. DEFENDANT NISSAN'S COUNTER–CLAIM

▬ Defendant Nissan moves for summary judgment on its counterclaim for breach of contract. Defendant Nissan claims that, pursuant to the Contract, Plaintiff owes Defendant Nissan a deficiency balance of $3,824.68. (Nissan's Br. at 13.)

The following facts are undisputed: Plaintiff entered into the Contract with Defendant Nissan; the terms of the Contract required Plaintiff to make minimum monthly payments; Plaintiff fell behind in her payments; the Contract provided Defendant Nissan with the right to repossess the vehicle if Plaintiff defaulted; Defendant Nissan had the vehicle repossessed; Defendant Nissan mailed a notice of sale and redemption rights to Plaintiff; Defendant Nissan sold the vehicle for $3,200.00.

Defendant Nissan claims that a deficiency balance of $3,824.68 remains. Plaintiff claims that she thought the repossession of the vehicle satisfied the account. The court finds that Plaintiff's belief was in error and, pursuant to the terms of the Contract, Plaintiff owes Defendant Nissan the deficiency balance. (Pl.'s Dep. Ex. 1, § F. ("[i]f a balance still remains owing [after sale of vehicle] you will pay it")).

Plaintiff further claims that an issue of fact exists regarding whether Defendant Nissan disposed of the vehicle in a commercially reasonable manner. (Pl.'s Resp. at 23.) Plaintiff refers to evidence indicating that the vehicle was sold for substantially less than she paid for the vehicle one year prior. (Pl.'s Resp. at 23.) Such evidence alone, however, is insufficient to overcome a motion for summary judgment because "a low price alone does not establish that a sale is commercially unreasonable." *Waide v. Tractor and Equipment Co.*, 545 So.2d 1327, 1329 (Ala.1989).

Plaintiff also claims that Defendant Nissan acted in bad faith in disposing of the vehicle. While commercially unreasonable behavior by a secured creditor alone does not constitute an absolute bar to recovery of a deficiency, if such behavior "is accompanied by the secured creditor's bad faith in disposing of the collateral, and the conduct causes the debtor to suffer a loss, then the debtor is entitled to set off the loss against the total deficiency." *Underwood v. Coffee County Bank*, 668 So.2d 10, 14 (Ala.Civ.App.1994) (quoting *Stone v. Cloverleaf Lincoln–Mercury, Inc.*, 546 So.2d 388, 390 (Ala.1989)).

Plaintiff claims Defendant Nissan acted in bad faith by selling the vehicle two days after the repossession, rather than waiting ten days as stated on the notice Defendant Nissan purportedly sent to Plaintiff. (Pl.'s Nissan Resp. at 15.) As discussed above, the court finds that Plaintiff has failed to provide evidence supporting this contention and, therefore, has not met her burden pursuant to Fed.R.Civ.P. 56. (*See* § II.C., *supra*.)

The court finds that summary judgment is due to be granted on Defendant Nissan's counterclaim for breach of contract.

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that:

(1) Defendant Nissan's Motion for Summary Judgment with respect to Plaintiff's claim of conversion be and the same is hereby DENIED;

(2) Defendant Nissan's Motion for Summary Judgment with respect to Plaintiff's claims of violation of Alabama Code § 7–9–501, et seq., be and the same is hereby GRANTED;

(3) Defendant Nissan's Motion for Summary Judgment with respect to Plaintiff's claim of violation of the FDCPA be and the same is hereby GRANTED;

(4) Defendant Nationwide's Motion for Summary Judgment with respect to Plaintiff's claims of conversion and violation of Alabama Code § 7–9–501, et seq. be and the same is hereby DENIED AS MOOT;

(5) Defendant Nationwide's Motion for Summary Judgment with respect to Plaintiff's claim of violation of the FDCPA be and the same is hereby DENIED;

(6) Defendant Nationwide's Motion for Summary Judgment with respect to the amount of damages permissible pursuant to the FDCPA be and the same is hereby DENIED; and

(7) Defendant Nissan's Motion for Summary Judgment with respect to Defendant Nissan's counterclaim for breach of contract be and the same is hereby GRANTED.